**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**06 CR 08 (LAK)**
_____

**UNITED STATES OF AMERICA**

**-against-**

**GERALD FIORINO,**

*Defendant.*
_____

**MEMORANDUM OF LAW IN SUPPORT OF PRE-TRIAL MOTIONS SUBMITTED ON BEHALF OF DEFENDANT FIORINO**
_____

Michael Rosen, Esq.
61 Broadway - Suite 1105
New York, New York 10006
212-742-1717
mrosenlaw@aol.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I    ALL ORAL COMMUNICATIONS INTERCEPTED THROUGH THE LISTENING DEVICES INSTALLED IN PELUSO'S AND ARDITO'S CELL PHONES MUST BE SUPPRESSED AS VIOLATIVE OF BOTH THE FOURTH AMENDMENT AND THE SPECIFIC REQUIREMENTS OF TITLE III (18 U.S.C. 2510 et. seq.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    The Roving Bug Provision is Unconstitutional . . . . . . . . . . . . . . . . . . . . . . 3

B.    The Roving Bug Warrant In This Case is An Unconstitutionally Overbroad General Warrant; It Violates the Particularity Clause of the Fourth Amendment, and the Roving Surveillance Statute is Unconstitutional As Applied to This Case . . . . . . . . . . . . . . . . . . 5

C.    Roving Bug Interception Order and the Ex The tension Orders Violated The Governing Statutory Provisions . . . . . . . . . . . . . . . . . . . . . . 9

D.    The Wiretap Orders Violated The Statutory Prerequisite Of Exhaustion Of Alternative Investigative Techniques . . . . . . . . . . . . . . . . . 12

POINT II    DEFENDANT FIORINO SHOULD BE GRANTED A BILL OF PARTICULARS BECAUSE THE INDICTMENT FAILS TO PROVIDE ADEQUATE NOTICE OF THE ESSENTIAL NATURE OF THE CONDUCT CHARGED IN COUNTS FIVE AND SIX (RACKETEERING ACT 2), NINETEEN (RACKETEERING ACT 7),AND TWENTY-SIX AND TWENTY-SEVEN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

POINT III    THE GOVERNMENT SHOULD BE DIRECTED TO DISCLOSE ALL EXCULPATORY AND IMPEACHMENT EVIDENCE REASONABLY IN ADVANCE OF TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . 24

POINT IV    THE GOVERNMENT SHOULD BE DIRECTED TO PRODUCE
TO DEFENSE COUNSEL, REASONABLY IN ADVANCE OF
TRIAL, THE IDENTITY OF ANY EXPERT WITNESS AND
ANY AND ALL INFORMATION, STUDIES AND REPORTS
UPON WHICH ANY EXPERT WITNESS WILL BASE
HIS/HER TESTIMONIAL OPINIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

POINT V    THE COURT SHOULD DIRECT THE GOVERNMENT TO
PROVIDE DEFENDANTS, REASONABLY IN ADVANCE OF
TRIAL WITH OTHER CRIMES EVIDENCE THAT THE
GOVERNMENT INTENDS TO INTRODUCE AT TRIAL . . . . . . . . . . . . .  32

POINT VI    DEFENDANT FIORINO SEEKS LEAVE TO MOVE *IN
LIMINE* FOR AN AUDIBILITY HEARING, A FRANKS
HEARING AND/OR FOR SUPPRESSION BASED ON
VIOLATION OF ATTORNEY CLIENT PRIVILEGE AND/OR
INADMISSIBLE HEARSAY AFTER THE GOVERNMENT
HAS DESIGNATED ANY TAPES THAT IT INTENDS TO
INTRODUCE AT TRIAL AND BASED UPON ANY
PARTICULARS AND ADDITIONAL DISCOVERY
PROVIDED BY THE GOVERNMENT FOLLOWING
SUBMISSION OF THESE MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004) . . . . . . . . . . . . . . . . . . . . . . 29, 30

*Delaware v. E. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431 (1986) . . . . . . . . . . . . . . . . . . . . . . 27

*Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-29

*Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30

*Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989 (1987) . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Riggs v. United States*, 280 F.2d 750 (5th Cir. 1960 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Abascal*, 564 F.2d 821 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*United States v. Acosta*, 2005 WL 281232 (D. Nev. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Aparo*, 221 F. Supp.2d 359 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Bagley*, 473 U.S. 667 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 31

*United States v. Baum*, 482 F.2d 1325 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Bianco*, 998 F.2d 1112 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 12, 18

*United States v. Blackmon*, 273 F.3d 1204 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 14-16

*United States v. Bortnovsky*, 820 F.2d 572 (2d Ci. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*United States v. Carniero*, 861 F.2d 1171 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Crumpton*, 54 F.Supp.2d 986 (D.Colo. 1999) . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Dalia*, 441 U.S. 238 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*United States v. Desena*, 260 F.3d 150 (2d Cir.  2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Ferrara*, 771 F.Supp. 1266 (D.Mass. 1991) . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Ferrara*, 2005 WL 903196 (D.Mass. April 12, 2005) . . . . . . . . . . . . . . . . . 18

*United States v. Flemmi*, 225 F.3d 78 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Friedman*, 854 F.2d 535 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. George*, 975 F.2d 72 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Gil*, 297 F.3d 93 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Ippolito*, 774 F2d 1482, 1486 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Kahn*, 415 U.S. 143 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*United States v. Kalustian*, 529 F.2d 585 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Kelly*, 420 F.2d 26 (2d. Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Labate*, 2001 WL 533714  (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Lebovitz*, 669 F.2d 894 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Madori*, 419 F.3d 159 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Marron*, 275 U.S. 192 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Marti*, 421 F.2d 1263 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Moore*, 949 F.2d 68 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Orena*, 883 F.Supp. 849 (E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . 19, 21

*United States v. Paone*, 782 F.2d 386 (2d Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Payne*, 63 F.3d 1200 (2d Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Pena*, 227 F.3d 23 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Persico*, 164 F.3d 796 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Sainato*, 29 F. Supp.2d 116 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Salemme*, 91 F.Supp.2d 141 (D.Mass. 1999) . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Salerno*, 937 F.2d 797, 809 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Shvarts*, 90 F. Supp.2d 219 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Silberman*, 732 F.Supp. 1057 (S.D. CA. 1990) . . . . . . . . . . . . . . . . . . . 7, 12

*United States v. Spur Knitting Mills, Inc.*,187 F. Supp. 653(S.D.N.Y. 1960) . . . . . . . . . . . . 25

*United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir1992) . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Strawberry*, 892 F. Supp. 519 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . 23

*United States v Taylor*, 707 F Supp 696 (SDNY 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*United States v. Torres*, 901 F.2d 205 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Urso*, 2005 WL 1036315 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Vento*, 533 F.2d 838 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. White*, 401 U.S. 745, 91 S.Ct. 1122 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . 8

## FEDERAL STATUTES

18 U.S.C.§ 2510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. 2518(1)(a)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. §2518(1)(b)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 2518(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. §§2518(4)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 2518(5)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. 2518(10)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C §2518(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. §2518(11)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

18 U.S.C. § 2518(11)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. 2518(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Crim. P. §12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R. Crim. P. §26.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Fed.R.Evid.§806 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## PRELIMINARY STATEMENT

Defendant Gerald Fiorino. submits this memorandum of law in support of his pre-trial motions pursuant to Fed. R. Crim. P. §§12(b) (4),(b) (5) and (d)(2).

The within   motions address the following issues: (1) whether   all oral communications intercepted through the listening devices installed in Peluso's and Ardito's cell phones should be suppressed as violative of both the Fourth Amendment and the specific requirements of Title III (18 U.S.C.§2510 *et. seq.*); (2) whether  the evidence obtained through court authorized wiretaps at Mario's Restaurant and Agostino's Restaurant should be suppressed on the grounds that the government has failed to establish "necessity" for issuance of a wiretap order, as required under 18 U.S.C.§§2518(1)(c) and (3)(c); (3) whether the Government should be compelled to provide Defendant Fiorino with a bill of particulars; (4) whether the Government should be compelled to disclose all exculpatory and impeachment evidence reasonably in advance of trial; (5) whether the  Government should be directed to produce to defense counsel, reasonably in advance of trial, the identity of any expert witness and any and all information, studies and reports upon which any expert witness will base his/her testimonial opinions; (6) whether  the Government should be directed to provide defendants, reasonably in advance of trial with "other crimes" evidence that the government intends to introduce at trial under Rule 404(b) or as proof of the Enterprise.

In addition,   Defendant Fiorino  reserves his right to move for severance after the

Government has presented its proposed trial groupings to the Court and to move *in limine*

for an audibility hearing, a Franks Hearing and/or for suppression based on violation of the

of the attorney client privilege and/or for suppression based on inadmissible hearsay after

the Government has designated any tapes that it intends to introduce at trial and based

upon any particulars and additional discovery provided by the Government following

submission of these motions, and to make such additional and further pre-trial motions as

are appropriate.

### POINT I

**ALL ORAL COMMUNICATIONS INTERCEPTED THROUGH
THE LISTENING DEVICES INSTALLED IN PELUSO'S AND
ARDITO'S CELL PHONES MUST BE SUPPRESSED AS
VIOLATIVE OF BOTH THE FOURTH AMENDMENT AND
THE SPECIFIC REQUIREMENTS OF TITLE III (18 U.S.C.
2510 et. seq.)**

In this case the Government's power to invade the privacy of its citizens is primed

to make a giant leap. In this case, we have listening devices embedded in an individual's

cell phones, capable of going everywhere and anywhere, and bringing with it the ears of the

government entrusted with unmonitored discretion to flip an on/off switch.

These embedded cell phone bugs violated the Constitution and the statutory

proscriptions of Title III in at least nine different ways: 1) a roving bug violates the

particularity requirement of the Fourth Amendment because it does not specify the place

to be searched; 2) the roving bug in this case is unconstitutionally overbroad and the statute

is unconstitutional as applied; 3) the installation of the roving bug violated the Fourth

2

Amendment; 4) the roving bug application and the warrant violated the requirements of 18

U.S.C §2518(11) and (12) that the warrant identify the person to be intercepted and that the

place be ascertained in advance of the interception; 6) the roving bug violated the statutory

requirement that the government exhaust alternative investigative means; 7) the roving bug

violated the "impracticality requirement" of the statute; 8) the interceptions were conducted

in violation of the order, and; 9) the orders extending the roving bug were misleading and

failed to apprise the court of the extent of the surveillance.

In addition the interceptions conducted pursuant to orders prior to the initiation of

the roving bug also violate Title III's requirement that alternative investigative means be

exhausted.

Defendant Fiorino is named as a subject in the application and interception orders

and therefore has standing to move to suppress as "aggrieved person[s]" under 18 U.S.C.

2518(10)(a) and 2510(11)("a person who was a party to any intercepted wire, oral or

electronic communication *or a person against whom the interception was directed*")(emphasis

added). *See United States v. Labate*, 2001 WL 533714 at 11 (S.D.N.Y. 2001). In addition,

defendant Fiorino has standing to suppress the conversations to which he was a party.

A.      **The Roving Bug Provision is Unconstitutional**

Section 2518(b) of Title 18 provides that any application for an order authorizing the

interception of wire, oral or electronic communications must include, *inter alia*, (and with

one exception) a particular description of the nature and location of the facilities from which

3

or the place where the communication is to be intercepted. Capturing a conversation through electronic interception is a search and seizure, *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 1879-80 (1967), and this statutory provision comports with the particularity requirement of the Fourth Amendment:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly describing the place to be searched* and the persons or things to be seized.

Title III provides an exception to the particularity requirement of the statute, but it cannot, we submit, create an exception to the Constitutional requirement. Section 2518(11), which authorizes what is colloquially referred to as a "roving bug," provides that the requirements of "specification of the facilities from which, or the place where, the communication is to intercepted do not apply" if "the application contains a full and complete statement as to why such specification is not practical . . ." and "the judge finds that such specification is not practical." This provision violates the plain language of the Fourth Amendment -- that no warrant shall issue but upon an oath or affirmation *particularly describing the place to be searched.* All interceptions conducted pursuant to the Order dated June 29, 2004 and its extensions, and all evidence derived therefrom, should be suppressed.

Defendant Fiorino recognizes that the Second Circuit has ruled otherwise in *United States v. Bianco,* 998 F.2d 1112 (2d Cir. 1993). For the reasons stated above and as further

elaborated upon below, the Second Circuit's decision cannot withstand scrutiny given this new powerful technology. The *Bianco* decision is wrong.

B.    **The Roving Bug Warrant In This Case is An Unconstitutionally Overbroad General Warrant; It Violates the Particularity Clause of the Fourth Amendment, and the Roving Surveillance Statute is Unconstitutional As Applied to This Case**

The United States Supreme Court has condemned general searches as "'the worst instrument of arbitrary power" because they place "'the liberty of every man in the hands of every petty officer.'" *United States v. Marron*, 275 U.S. 192, 195 (1927) (quoting James Otis). Likewise, the Second Circuit lambasted general warrants as "abhorrent to fundamental notions of privacy and liberty" because they authorize "police agents to undertake an indiscriminate rummaging through citizens' personal effects." *United States v. George*, 975 F.2d 72, 74-75 (2d Cir. 1992) (striking down a warrant that authorized seizure of various items and "any other evidence relating to commission of a crime"). *See also United States v. Marti*, 421 F.2d 1263, 1268 (2d Cir. 1970) (in invalidating an overbroad warrant, the court noted that "the danger underlying . . . general warrants is that the person searched is at the mercy of the executing official").

By limiting searches "to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016

(1987). The particularity requirement "makes general searches * * * impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76 (1927). The importance of this requirement has only increased over time as technology has advanced. Indeed, in amending Title III, Congress expressed anxiety over the growing availability of "[e]lectronic hardware making it possible for overzealous law enforcement . . . to intercept the personal . . . communications of others." S.R. 99-541, 1986 U.S.C.C.A.N. 3555, 3557.

    1.    **The Absence of Particularity**

    The warrant/interception order in this case provided no specification of place whatsoever, authorizing the government to intercept and record "oral communications at locations used by John "Buster" Ardito" that are impractical to specify [pursuant to 18 U.S.C. 2518(1)(a)(iii)], through a listening device that has been installed in the 2181 cell phone, or through other means . . . .".  The government has taken the concept of a "roving bug" to its literal extreme – the bug moved automatically with its unwitting host, without any extra effort on the government's part.

    In general, the  roving bug scenario has generally been limited to situations where the government was authorized, during a thirty day period, to plant a bug at anticipated meeting places without getting individual warrants each time. Without specifying an exact place, these orders at least required that there *be* an identifiable place where the bug would be affixed, ascertained in advance, so that interception and recording could only occur *at*

*that place.* Once the subjects left that place, they were no longer vulnerable to interception.

In *Bianco,* the government obtained a roving bug order, and permission to enter buildings surreptitiously in order to install a listening device. The bug was installed at a home where, the government learned in advance, an organized crime induction ceremony was scheduled to and allegedly did take place. 998 F.2d at 1119. The warrant necessarily required, albeit did not specify in advance, an actual place or places and the interception could only occur there and nowhere else. *Cf. United States v. Silberman,* 732 F.Supp. 1057 (S.D. CA. 1990)(roving wiretaps on identified public telephones).

In contrast, in this case, the government used the roving bug to conduct an aural "wide-ranging exploratory" search in violation of the privacy rights of Ardito and everyone who spoke with him. *Garrison*, 480 U.S. 79 at 84. Unlike *Bianco* and *Ferrara*, the government did not bug a single location or series of locations. Nor did it limit its eavesdropping to a set of phone lines. Instead, the government placed a bug inside of Peluso's and Ardito's phone, knowing that   was likely to carry that phone with him wherever he went. This effectively turned Messrs. Ardito and Peluso  into a "live wires," allowing the government to grossly invade the privacy of Mr. Ardito  and everyone with whom he spoke. Although it is hornbook law that a person can "reasonably expect" that his conversational partners may choose to report or even record conversations for law enforcement, it unreasonable to expect another to unknowingly function as a human microphone. *See United States v. White*, 401 U.S. 745 (1971).

2.    **The Absence of Accountability**

The Second Circuit found that the order in *Bianco* passed Constitutional muster in part because the order also contained "'provisions to minimize the risk that the roving authority it granted could be abused.'"" The order required that notice be given to the judge in advance of surreptitious entry, if possible, or as soon thereafter as possible – "a procedure that provided the district judge with the opportunity to 'revoke or revise the roving interception Order if he perceived that the government was attempting too many intrusions or seeking interceptions at sensitive locations.'" 998 F.2d at 1125. The Order itself provided for nearly contemporaneous judicial supervision. Given the far greater ease with which the agents in this case could listen -- a flip of a switch -- the risk of abuse and the need for close supervision was far greater; yet, the Order contained no comparable provision. And, whereas in *Bianco* the Judge required seven-day progress reports, the Order in this case required the ordinary ten-day interval reports. The fact that the reports filed in this case did not disclose the extent of the interceptions, but just summarized selected conversations, is addressed below. Indeed, the Roving Bug Order in this case was virtually the same as any other wiretap order, without any meaningful additional safeguards.

3.    **Monitoring Agents Exercised Unmonitored Discretion**

In *United States v. Cusmano*, 67 F.3d at 1504, the government used a warrantless thermal imager to monitor the outside of a home and detect the cultivation of marijuana. In holding that the defendants had an expectation of privacy in the "heat signatures" of

their home, the Court stated:

> We do not imagine that it would be considerably more difficult
> to identify (if not, strictly speaking, to watch) two people
> making love in the privacy of their darkened bedroom. We trust
> that the government would, in most instances, employ a more
> capable imager with discretion; nonetheless, the very existence
> of such discretion would run afoul of the Constitution. Id.

(emphasis supplied).

The government's discretion to decide when, where, who and what to record over a roving bug --wherever it may be -- runs far afoul of the Constitution. While, in a typical telephone wiretap scenario the agents have discretion to decide when, what and who to intercept and record, they are at least limited to an identifiable instrument of communication for which they have made the requisite probable cause showing. And, whether they have recorded when they shouldn't have been listening can at least be retroactively ascertained by reference, not only to the conversations recorded, but to the telephone records that reveal what time a call occurred and to or from what number. When agents listen over an open microphone, there are no such constraints. There are no verifiable records of locations, times and persons present. The conversations themselves will not reveal this information as telephone records do.

## C.    Roving Bug Interception Order and the Ex Tension Orders Violated The Governing Statutory Provisions

Section 2518(11) provides as follows with respect to the interception of oral (as opposed to wire or electronic) communications:

9

The requirements of subsections (1)(b)(ii) and (3)(d) of this section relating to the specification of the facilities from which, or the place where, the communication is to be intercepted do not apply if—

(a)    in the case of an application with respect to the interception of an oral communication—

(i)    the application is by a Federal investigative or law enforcement officer and is approved by the Attorney General, the Deputy Attorney General, the Associate Attorney General, an Assistant Attorney General, or an acting Assistant Attorney General;

(ii)    the application contains a full and complete statement as to why such specification is not practical and identifies the person committing the offense and whose communications are to be intercepted [emphasis supplied]; and

(iii)    the judge finds that such specification is not practical;

1.    **Requirement of Identifying Interceptees**

This section was enacted as an exceptional provision and it differs from the statute's other sections governing wiretaps and bugs; an application for roving surveillance must specifically "identify[y] the person committing the offense and whose communications are to be intercepted." In contrast, section (1) of the statute provides that the application must include, *inter alia*, "(iv) the identity of the person, *if known*, committing the offense and whose communications are to be intercepted." In other words, section (11) dispenses with the requirements regarding specification of place or facilities, provided, *inter alia*, the proposed interceptee is specifically identified.

The government's application requested permission to continue to intercept and

10

record the oral communications of the named subjects as well as "others as yet unknown" at the authorized locations. In a separate subdivision, it then requested new permission to intercept and record "oral communications at locations used by John Ardito that are impractical to specify . . . through a listening device that has been installed in the 2181 cell phone, or through other means." This separate subsection does not identify the persons[s] whose communications are to be intercepted. Even assuming that the section requesting roving surveillance is limited to the subjects previously listed, those subjects include "others as yet unknown." The application violates the requirement of §2518(11)(3)(ii) that it specifically identify the proposed interceptee – "others unknown" are not permitted.

This is a distinction with a difference. In upholding a roving bug, the Second Circuit cited this provision in concluding that "congress added several more protections against arbitrary surveillance." *United States v. Bianco*, 998 F.2d at 1124. The Court stated:

> In addition, unlike other orders under Title III, which require identification of the anticipated speaker only "if known," §2518(1)(b)(iv), to satisfy the roving intercept statute, the person targeted for roving interception must be identified, and only conversation involving the specified individual may be intercepted. 18 U.S.C. §§2518(4)(c), 2518(11)(a)(ii). *Id.* at 1123; *accord United v. Silberman,* 732 F.Supp. 1057, 1062 (S.D.CA. 1990).

The government clearly violated this provision.

2.    **Requirement of Ascertaining Place**

In addition, 18 U.S.C. § 2518(12) states that:

> An interception of a communication under an order with

respect to which the requirements of subsections (1)(b)(ii) and (3)(d) of this section do not apply by reason of subsection (11)(a) shall not begin until the place where the communication is to be intercepted is ascertained by the person implementing the interception order.

Title 18 U.S.C. § 2518(11)(a)(iii) further requires that "the judge finds that such specification is impractical." The June 18, 2003 and November 7, 2003 Orders are boilerplate. It includes no such finding. It simply authorizes interception at locations "that are impractical to specify." Rather than greater care and scrutiny, this Order apparently received no more attention than the ordinary application for a telephone wiretap. The order in this case was insufficient on its face and all of the evidence obtained and derived from it should be suppressed.

**D.    The Wiretap Orders Violated The Statutory Prerequisite Of Exhaustion Of Alternative Investigative Techniques**

A requirement for every Title III interception essential to its constitutionality is a prior judicial finding that "normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous." For that reason, Title III demands from the government:

[a] full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. 18 U.S.C. § 2518(1)(c ).

Before authorizing electronic surveillance, the issuing judge must find that this requirement has been satisfied. *See United States v. Vento*, 533 F.2d 838, 849 (3d Cir. 1976);

12

18 U.S.C. § 2518(5)(c). Indeed, strict compliance with 18 U.S.C. § 2518(1)(c) is essential "to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn,* 415 U.S. 143, 153, n. 12 (1974).

The "plain effect" of this necessity requirement is to "guarantee that wiretapping or bugging occurs only when there is a genuine need for it and only to the extent that it is needed." *United States v. Dalia*, 441 U.S. 238, 250 (1979)  It ensures that "wiretapping is not resorted to in situations where traditional investigative procedures would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12 (1974). *See also United States v. Torres*, 901 F.2d 205, 231 (2d Cir. 1990).

To establish necessity, the government must do more than show that electronic surveillance would be "more efficient" than normal investigative procedures. *United States v. Lilla*, 699 F.2d 99, 105 n.7 (2d Cir. 1983). Instead, the government must "make a particularized showing in each case of the improbability of success or high degree of danger from the use of alternative investigative techniques." *United States v. Abascal*, 564 F.2d 821, 825-6 (9th Cir. 1977). "Generalized and conclusory statements that other investigative procedures would prove unsuccessful" do not suffice. *Lilla, 699 F.2d at 104*. The government cannot just assert that the class of case at issue, be it a drug conspiracy or organized crime case, is "tough to crack." *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975).12   Nor can the government "manufacture necessity" by simply claiming "a vast investigative

purpose." *United States v. Blackmon*, 273 F.3d 1204, 1211 (9th Cir. 2001) (government failed to show necessity where it just described the limits of regular investigative techniques and insisted that such techniques were not adequate to investigate a huge drug conspiracy).

Where traditional investigative techniques "easily suggest themselves and are potentially productive and not unduly dangerous," the government cannot show necessity. *United States v. Ippolito*, 774 F2d 1482, 1486 (9th Cir. 1985).

Furthermore, the government must establish necessity each time it seeks a new wiretap or asks to extend an old one. *United States v. Carniero*, 861 F.2d 1171, 1176 (9th Cir. 1988). The government cannot "simply carry over statements from prior applications" without making further investigative attempts. *Blackmon*, 273 F.3d at 1209. *See also Carniero*, 861 F.2d at 1180 (affidavit did not establish necessity where it appeared to be a "word processor copy" of a prior affidavit used on a separate wiretap). Nor may the government jump quickly from wiretap to wiretap without continually reassessing the viability of alternative techniques. *United States v. Crumpton*, 54 F.Supp.2d 986, 1007 (D.Colo. 1999); *see also Carniero*, 861 F.2d at 1177-83 (although government established necessity as to first wiretap, it erred thereafter by giving no thought to traditional techniques and mechanically filing further wiretap applications).

1.    **There Was No Genuine Need For The Peluso Or The Ardito Roving Bug**

Here, the government did not establish a "genuine need" for either the Peluso or the Ardito roving bug. *Dalia*, 441 U.S. at 250.    It is clear from the beginning of the escalating

14

series of interception orders that several alternative investigative techniques "easily suggest[ed] themselves" and were more than "potentially productive." *Ippolito*, 774 F.2d at 1486. The government could have and in fact did rely upon its confidential informants. It could have introduced an undercover agent. It could have relied on pre-existing warrants for electronic surveillance. Indeed, the government never explained why a confidential informant and at least four separate existing wiretap orders combined with interception of all communications on the cell phones used by Peluso and Ardito were insufficient investigative techniques. Indeed, it appears that the government had enough access to both Peluso and Ardito early on in the investigation to implant a listening device in both cell phones.

Necessity can hardly require turning a target's world into a massive soundstage. Yet, rather than acknowledging the increasing redundancy of these forms of surveillance, the government just reiterated, in each successive affidavit, much of the same boilerplate it had used in earlier applications. *Blackmon*, 273 F.3d at 1209 (castigating the government for this very practice). This jumping from interception order to interception order without a meaningful and continual reassessment of necessity cannot withstand even cursory scrutiny. *Carniero*, 861 F.2d at 1177-83.

Equally vacuous are the government's attempts to "manufacture necessity" by "claiming a vast investigative purpose." *Blackmon*, 273 F.3d 1204 at 1211. To minimize the value of the investigative assets already at its disposal, the government repeatedly stressed

in each of its affidavits the scope of the Genovese Family's criminal activities and the large number of people associated with it.  However, this factor exists in any organized crime investigation, and its presence here did not excuse the government from showing necessity in this particular case. *See Abascal*, 564 F.2d at 825-26 (the government must "make a particularized showing in each case" as to necessity).

The government's failure to establish necessity made electronic surveillance through the Ardito and Peluso roving bugs illegal. Thus, all of the interceptions via that surveillance should be suppressed.

> 2.    **The Roving Bug Violated The "Impracticality" Requirement Set Forth in 18 U.S.C. §2518(11)(a).**

For most forms of Title III surveillance, an application must include a "particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted." 18 U.S.C. §2518(1)(b)(ii). Title III's "roving" oral surveillance provision allows the government to evade this requirement under a narrow set of circumstances. Under 18 U.S.C. §2518(11)(a), the government need not specify "the place where" it intends to intercept oral communications if, in addition to all of the usual Title III requirements: (1) the roving surveillance application has been approved at a higher level than that required for other forms of Title III surveillance (i.e., higher than that of a Deputy Acting Assistant Attorney General); (2) the government provides "a full and complete statement as to why such specification is not practical;" (3) the government identifies the person committing the offense and whose communications are to be intercepted"; and (4)

the judge finds that such specification is not practical. *See U.S. v. Bianco*, 998 F.2d 1112, 1124 (2d Cir. 1993) (in finding roving oral surveillance constitutional, the court emphasized these additional requirements as "safeguards").

"Impracticality" hinges upon two things: the predictability of a target's movements and the feasibility of wiring a given location. Thus, Congress stated:

> Situations where ordinary specification rules would not be practical would include those where a suspect moves from room to room in a hotel to avoid a bug or where a suspect sets up a meeting with another suspect on a beach or a field.

S.R. 99-541, 1986 U.S.C.C.A.N. 3555, 3586.

The former example highlights unpredictability while the latter paints a situation in which it would not be feasible to wire the location at issue. See, e.g., *United States v. Ferrara*, No. Civ. 00-11693, 2005 WL 903196, 6 (D.Mass. April 12, 2005) (roving oral surveillance of a mafia induction ceremony was improper because the government could predict two days in advance where the ceremony would occur, thus making it "practical" to seek a warrant targeting that location).

The roving surveillance section of the statute makes a distinction between the showing necessary to implement roving surveillance of wire communications (telephones) and the showing necessary for roving surveillance of oral communications (bugs). To intercept oral communications through listening devices, the judge must find that "specification is not practical." 18 U.S.C. §2518(11)(a)(iii). To intercept wire communicatons, the judge must only find that there is "probable cause to believe that the person's actions

17

could have the effect of thwarting interception from a specified facility." §2518(11)(b)(ii). To establish "impracticality" in order to use a bug, the government must prove that it is objectively impractical to specify where a target will conduct relevant conversations; it is not enough for the government to simply show that a target has moved about to evade surveillance in the past. *United States v. Orena*, 883 F.Supp. 849, 862 (E.D.N.Y. 1995). *See also United States v. Salemme*, 91 F.Supp.2d 141, 272-3 (D.Mass. 1999), *rev'd in part on other grounds, U.S. v. Flemmi*, 225 F.3d 78 (1st Cir. 2000); *United States v. Ferrara*, 771 F.Supp. 1266, 1289 (D.Mass. 1991). This latter showing suffices for wire surveillance (telephone tap), but not for oral surveillance. The roving wire surveillance provision of Title III only demands that the government show that a "person's actions could have the effect of thwarting interception." 18 U.S.C. § 2518(11)(b). Roving oral surveillance poses a much heavier burden to show that the person's actions or circumstances have made (not, could have the effect of making) specification impractical. Indeed, in *Salemme*,. 91 F.Supp.2d at 273 the court faulted a government agent for conflating the two standards, stating:

> Section 2518(a)(ii) [roving oral surveillance] requires not only an effort to evade surveillance, but a *successful* effort which renders it "impractical" to identify the place to be bugged at the time the warrant is issued (italics in original).

Congress' demand for a stronger showing for roving oral surveillance makes sense in light of its finding that oral communications involve greater expectations of privacy than wire communications do. S.R. 99-541, 1986 U.S.C.C.A.N. 3555, 3557.

Here, the government's roving oral surveillance violated the "impracticality

requirement." Indeed, the government's own pleadings establish that it would have been practical for the government to capture the anticipated conversations without resorting to roving oral surveillance at all. For example, in its initial affidavit requesting roving surveillance by placing a listening device in the Ardito cell phone, the government simply asserted that:

> To date, all of the goals of the prior orders have not yet been achieved. Because of this, as well as the SUBJECTS' discovery of the other listening devices, and the FBI's belief from surveillance, intercepted communications, and source information that ARDITO and the other SUBJECTS continue to discuss their participation in racketeering activities at other locations besides the FOUR RESTAURANTS, this application seeks authorization to intercept oral communications at locations used by JOHN "BUSTER" ARDITO that are impractical to specify, through a listening device placed in the ARDITO CELLPHONE...(Affidavit in support of Wiretap Order at ¶20: Bug 001257)

However, this assertions does not satisfy the "impracticality" requirement. The government cannot argue that it was impractical for it to bug the exteriors of bugged locations because the government had already done this - - in this case - - with great success.

The government did not explain why it could not conduct similar surveillance of the exteriors of other bugged locations that Ardito and Peluso used frequently – when all it required was authorization to activate the bug at additional locations.     Although the government would have preferred that Peluso and Ardito conduct all of their interactions inside a single office, their failure to do so did not render it "impractical" to monitor him, merely inconvenient.     Peluso's propensity to frequent certain locations, including

19

Fiorino's jewelers, coupled with the feasibility of interception conversations at these locations and their exteriors, just as they did at the authorized locations, made it practical for the government to seek warrants as to each of the locations at issue and to monitor them without resort to roving surveillance. That Peluso and Ardito may have been surveillance-conscious does not dispel the objective reality that his movements were predictable in nature; thus, the government did not satisfy the "impracticality" requirement. See *Orena*, 883 F.Supp. at 862. Accordingly, the government's use of roving surveillance was improper, and all statements intercepted using the roving surveillance should be suppressed.

### POINT II

**DEFENDANT FIORINO SHOULD BE GRANTED A BILL OF PARTICULARS BECAUSE THE INDICTMENT FAILS TO PROVIDE ADEQUATE NOTICE OF THE ESSENTIAL NATURE OF THE CONDUCT CHARGED IN COUNTS FIVE AND SIX (RACKETEERING ACT 2), NINETEEN (RACKETEERING ACT 7),AND TWENTY-SIX AND TWENTY-SEVEN**

An indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged."Fed. R. Crim. P. 7(c)(1). The Sixth Amendment guarantees a criminal defendant the right "to be informed of the nature and cause of the accusation......." An indictment "must charge a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events.'' *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998), *quoting United States v. Stavroulakis*, 952 F.2d

686, 693 (2d Cir.), *cert. denied*, 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992).

Here, the indictment  on its face is insufficient to provide  defendant Fiorino with sufficient detail to defend against the charges, to protect against unfair surprise at trial, and to raise a double jeopardy claim in the future.  For example, Counts  Five and Six (Racketeering Act 2) fail to alleges the nature of the extortionate threat or even the identity of the alleged victim.  In Count Nineteen (Racketeering Act 7) neither the  Indictment nor the mountain of materials provided by the government provide even a hint to  suggest  the essential nature of the financial transaction which forms the basis of the alleged money laundering agreement.  Similarly, there is nothing in the discovery or the Indictment to reveal the alleged "false and misleading story" or the nature of the "alleged fraudulent documents" which constitute the obstruction of justice charged therein,.

In *United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970), the First Circuit held that a loansharking indictment was insufficient and should be dismissed where it failed to name the alleged victim, the means by which the alleged threats were communicated, and a more precise location of the alleged crime. The Court found that the indictment which in essence accused the defendant ""of making threats by an unstated means to an  unnamed person on a particular day in a city of moderate size," prevented the defendant  from adequately preparing for trial. *Id.* at 979. Moreover, the Court held:

> On an indictment as vague as that at bar, it is possible, however unlikely, for a prosecutor to obtain a conviction based wholly on evidence of an incident completely divorced from that upon which the grand jury based its indictment. The prosecution may

not have the power ""to roam at large"" in this fashion.  *Id.* at 980.

A defendant accused of this serious crime with all of its sentencing implications, should not be required to wait until testimony develops at trial to prepare a legal and factual defense.   It is to safeguard against this very kind of trial by ambush for which a bill of particulars is intended.  *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995).  In  *United States v Taylor*, 707 F Supp 696 (SDNY 1989),  the defendant was charged with a conspiracy to distribute drugs.  The *Taylor* Court held that the defendant was entitled to a bill of particulars stating the names of all persons the Government claimed to be co-conspirators; the dates that each such defendant joined the conspiracy; and the approximate dates and locations of any meetings or conversations at which Government would contend defendant had joined conspiracy.

As in *Taylor*, defendant Fiorino is equally entitled to prepare for his defense knowing the substance of the agreements that he allegedly made which form the bases of the conspiracies charged in the Indictment,  who his co-conspirators are alleged to be, when it is alleged that he joined the conspiracy,  approximately what dates and locations of any meetings or conversations at which Government will contend that each of his co-conspirators joined the conspiracy.

Nor does the  voluminous discovery compensate for a lack of basic information regarding the allegations.   In  *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Ci. 1987), where the government failed to provide the defendant with a bill of particulars, the Second Circuit

reversed the conviction finding:

The relevance of key events was shrouded in mystery at the commencement of and throughout the trial. The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.

It is respectfully submitted that the government does not fulfill its obligation to notify defendants as to the essential nature of the conspiracies charged merely by providing mountains of documents to defense counsel in which the key to the mystery may be hidden in plain view.  *Bortnovsky*, 820 F.2d at 575, *see also United States v. Trie*, 21 F. Supp. 2d 7, 21-22 (D.D.C. 1998).

As in  *Bortnovsky*, in the case before this Court, beyond the bare bones of the Indictment, the relevance of much of the material provided to the defendants to what the government is actually alleging in the Indictment  is also shrouded in mystery.  Thus, the government leaves the defendants to sift through thousands of  pages of printed material, hundreds of hours of tape recorded conversations, hundreds of surveillance photographs and other materials,  in the hopes that they may glean some understanding of which facts <u>may</u>  identify the offenses charged.  This deluge of documents does not supplant the need for a bill of particulars.

The  question is not  what  counsel may learn   in reviewing the government''s proposed evidence, but rather what the charges mean and what the grand jury had  in mind when it brought the charges.  *Bortnovsky*, 820 F.2d at 575; *See also United States v. Spur*

*Knitting Mills, Inc.*, 187 F. Supp. 653, 654 (S.D.N.Y. 1960)(Weinfeld, J.)(ordering government to provide a bill of particulars despite government''s contention that defendant could discover the requested information through its own records). *See also United States v. Urso*, 2005 WL 1036315 at 12 in which Judge Garaufis ordered the Government to at least one of the following disclosures: (1) the identity of the victim or victims (individual or business) of the alleged conspiracy; (2) the specific locations where credit was allegedly extended or sought to be collected; or (3) the identity of the alleged loansharking co-conspirators, based on the finding that "the bare-bones allegation contained in this portion of the indictment will sufficiently allow Basile to prepare for trial."

In this case, without a bill of particulars defendant Fiorino will be irreparably hampered in the preparation of his defense.

## POINT III

### THE GOVERNMENT SHOULD BE DIRECTED TO DISCLOSE ALL EXCULPATORY AND IMPEACHMENT EVIDENCE REASONABLY IN ADVANCE OF TRIAL[26]

Defendant Fiorino moves for prompt and thorough discovery pursuant to the government's disclosure obligations and this Court's discretionary authority to manage pretrial discovery. In making this request, Defendant Fiorino is mindful of cases in recent years interpreting *Brady* with regard to the scope and timing of the government's obligation to disclose impeachment material. However, we are concerned that the government may fail to satisfy its disclosure obligations if disclosure occurs too close to the date of trial with

an insufficient opportunity for the defense to review and assimilate the information
provided.

The proposition is well settled that every prosecutor has a duty to produce evidence
that is "material" to the defendant's guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87,
83 S.Ct. 1194 (1963); *see Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555 (1995); *United States
v. Bagley,* 473 U.S. 667 (1985). For Brady purposes, information is material "if there is a
reasonable probability that, had the evidence been disclosed to the defense, the result of the
proceeding would have been different." *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989
(1987). A "reasonable probability" is a probability "sufficient to undermine confidence in the
outcome." *See id.* (internal citations omitted); *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375; *Kyles*, 514
U.S. at 437, 115 S.Ct. 1555; *United States v. Madori*, 419 F.3d 159, 169 (2d Cir. 2005);*United
States v. Payne*, 63 F.3d 1200, 1209 (2d Cir.1995).

The prosecutor's obligation to turn over "material" information is not limited to
"exculpatory" information but also encompasses information that could be used for
impeachment purposes, so-called Giglio material. *Bagley*, 473 U.S. at 676 (Impeachment
evidence as well as exculpatory evidence falls within the Brady rule "[as being] 'evidence
favorable to the accused' . . . so that if disclosed and used effectively, it may make the
difference between conviction and acquittal); *see Giglio v. United States,* 405 U.S. 150, 154, 92
S.Ct. 763 (1972). This duty to disclose impeachment evidence stems from the Constitutional
"right to put before a jury evidence that might influence the determination of guilt." *United

*States v. Salerno,* 937 F.2d 797, 809 (2d Cir. 1991), reversed on other grounds, 112 S.Ct. 2503 (1992), quoting *Pennsylvania v. Ritchie,* 488 U.S. at 57, 107 S.Ct. 989 (1987). As the Supreme Court has long recognized, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Delaware v. E. Van Arsdall,* 475 U.S. 673, 678-79 (1986).  In fact, for Giglio purposes, the government's disclosure obligations extend to any declarant whose statements the government will introduce at trial whether or not the declarant is testifying as a witnesses. See Fed.R.Evid.806; *United States v. Friedman*, 854 F.2d 535, 569 (2d Cir. 1988).

The appropriate timing for disclosure of information material to the defense is dictated by constitutional due process concerns, so disclosure must be made in time for its effective use at trial or at a plea proceeding. *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001); *United States v. Persico*, 164 F.3d 796, 804 (2d Cir. 1999). In *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001), the Second Circuit ruled that a prosecutor is not constitutionally required to provide exculpatory and impeachment material immediately upon demand of a defendant, far in advance of trial and without regard to its "materiality." *Coppa*, 267 F.3d at 142 ("we have never interpreted due process of law as requiring more than that Brady material must be disclosed in time for its effective use at trial"), *abrogating United States v. Shvarts,* 90 F. Supp.2d 219 (E.D.N.Y. 2000). Rather, the Second Circuit concluded that due process requires the prosecutor to disclose exculpatory and impeachment information "no later than the point at which a reasonable probability will exist that the outcome would have been

different if an earlier disclosure had been made." *Id.* Therefore, it is incumbent upon the prosecutors to make a "prediction" in order to "gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability is reached." *Id.* at 143, *quoting Kyles*, 514 U.S. at 437, 115 S.Ct. at 1555.

The Court in *Coppa* also recognized that the trial judge retains the authority to determine when disclosure should occur. While it noted that no constitutional principle mandates disclosure of exculpatory and impeachment evidence at the moment of defendant's request, "[t]his case presents no occasion to consider the scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management." *Id.* at 146. Upon remand, Judge Glasser quoted from the *Coppa* decision and exercised "prudent case management" in ordering disclosure of all material evidence four weeks before trial to afford time for motions *in limine*. *United States v. Aparo*, 221 F. Supp.2d 359, 366 (E.D.N.Y. 2002).

Since the decision in *Coppa*, a District Court in Nevada has ruled that the Jencks Act does not apply to the disclosure of material information, having been superseded by Fed.R.Crim.P. 26.2, so the government cannot rely on the Jencks Act to withhold pretrial disclosure until the eleventh hour. *United States v. Acosta*, 2005 WL 281232, 5 (D. Nev. January 31, 2005).

The "prediction" of a prosecutor, who views his evidence through the eyes of an advocate for one side, cannot satisfy the demands of Due Process. Indeed, in *Crawford v.*

*Washington,* 541 U.S. 36, 124 S.Ct. 1354, 1373 (2004), Judge Scalia wrote, in reference to

evidence admitted in violation of the Sixth Amendment:

> We have no doubt that the courts below were acting in utmost
> good faith when they found reliability. The Framers, however,
> would not have been content to indulge this assumption. They
> knew that judges, like other government officials, could not
> always be trusted to safeguard the rights of the people . . . .
> They were loath to leave too much discretion in judicial hands.

Prosecutors, like other government officials, cannot "always be trusted to safeguard the

rights of people." *Id.; see also Leka v. Portuondo, 257 F.3d 89 (2d Cir. 2001)* (state violated its

Brady obligations in a murder prosecution by delaying disclosure of exculpatory eyewitness

evidence from an off-duty police officer which contradicted two eyewitnesses at trial);

*United States v. Gil*, 297 F.3d 93, 106 (2d Cir. 2002)(Brady violated where government lumped

together exculpatory documents with 2,700 pages of material itemized in a 41-page

memoranda produced less than one business day before trial, despite government's own

assessment of memorandum as insignificant.)

In many criminal cases, the amount of material disclosed two or three days before

trial dwarfs the amount of discovery provided over the period of several months that the

typical case is pending. Particularly, the government's practice of providing impeachment

material the weekend before trial amounts to trial by ambush, especially when compared

to discovery practice in civil cases where the litigants receive discovery and probe their

adversary's case far in advance of trial. In criminal cases, defense attorneys often find

themselves throughout the pretrial period with little to do for many months only to be

inundated in the final days before trial. It is not until those final days, after impeachment

material has been provided, that defense counsel can prepare trial strategy and evaluate

lines of defense. If the goal is an outcome in which the public can have confidence, Bagley,

473 U.S. at 678, then the disparity between the timing of disclosure in criminal and civil

cases has to be narrowed.

There are no allegations in this case that would warrant withholding impeachment

or exculpatory evidence. Therefore, we submit that due process requires at least two months

for the defense to review the information investigate the credibility of the government's

witnesses, and file appropriate motions *in limine*.    Any questions concerning the

discoverability of a particular document should be submitted to the Court for in camera

review and determination. *See United States v. Sainato*, 29 F. Supp.2d 116, 117 (E.D.N.Y. 1998)

(agent notes submitted to court to determine whether the notes constituted Jencks Act

statements). At a minimum, the Court should order the following disclosure two months

before trial

1.    production of materials showing any prior criminal or other bad acts of any

witness the government anticipates calling in its case-in-chief, including (i) a copy of any

criminal record of any such witness; (ii) a written description of any prosecutable federal

offense known by the Government to have been committed by any such witness; and (iii)

a written description of any conduct that may be admissible under Rule 608(b) of the

Federal Rules of Evidence known by the Government to have been committed by any such

witness;

2.    production of materials showing a potential bias or prejudice of any witness

the Government anticipates calling in its case-in-chief, including (i) a statement whether any

promise, reward, or inducement has been given to any such witness, identifying by name

each such witness and each promise, reward, or inducement, and (ii) a copy of any promise,

reward, or inducement reduced to writing;

3.    any report prepared by the Pretrial Services Agency or the United States

Probation Department in connection with any witness the Government anticipates calling

in its case-in-chief should be submitted to the Court for in camera inspection in accord with

the procedures set forth in *United States v. Pena,* 227 F.3d 23 (2d Cir. 2000) and  *United States*

*v. Moore*, 949 F.2d 68 (2d Cir. 1991); and

4.    information known to the Government about: (i) complaints made by

cooperating witnesses, (ii) reports of cooperating witnesses during investigations, (iii)

adverse personnel information of agent witnesses, and (iv) any mental or physical

impairment of any witnesses whom the Government anticipates calling in its case-in-chief.

5.    any statements of witnesses that are inconsistent with prior statements of

that witness or of another witness, which statements constitute impeachment evidence

and must be disclosed.

**POINT IV**

**THE   GOVERNMENT   SHOULD   BE   DIRECTED   TO
PRODUCE   TO   DEFENSE   COUNSEL,   REASONABLY   IN**

30

**ADVANCE OF TRIAL, THE IDENTITY OF ANY EXPERT WITNESS AND ANY AND ALL INFORMATION, STUDIES AND REPORTS UPON WHICH ANY EXPERT WITNESS WILL BASE HIS/HER TESTIMONIAL OPINIONS**

At the trial of this case, the government may call one or more witnesses to testify as non-scientific "expert witnesses." To the extent that any expert is permitted to testify in this case, it is respectfully requested that this Court direct the government to disclose to defense counsel the name and address of each such expert, a summary of his/her anticipated testimony, and the reports, studies or other data on which such expert testimony will rely. Timely disclosure of this information is needed to enable counsel to file a motion *in limine* prior to trial to properly restrict the scope and extent of the proposed testimony. Failing such disclosure, the witness will be free to say anything, claim the source is some confidential government document or witness, without counsel effectively confronting this testimony.

Rule 16(a)(1)(G), of the Federal Rules of Criminal Procedure provides that, upon defendant's request, "the government must give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . .The summary provided under this subparagraph must describe the witnesses's opinions, the basis of the reasons for those opinions, and the witness's qualifications." The Rule permits the opposing party to determine, prior to trial, whether the proposed witness meets the qualifications of an expert within the meaning of the Federal Rules of Evidence. It is, therefore, respectfully requested

31

that the government be directed to provide the requested information to the defense.

## POINT V

**THE COURT SHOULD DIRECT THE GOVERNMENT TO
PROVIDE DEFENDANTS, REASONABLY IN ADVANCE
OF TRIAL WITH OTHER CRIMES EVIDENCE THAT THE
GOVERNMENT INTENDS TO INTRODUCE AT TRIAL**

Defendant Fiorino requests that the government be directed to indicate reasonably in advance of trial whether it will attempt to introduce evidence of prior acts of the defendants in accordance with Rule 404(b) of the Federal Rules of Evidence or as uncharged conduct which is evidence of the enterprise. Any evidence of other crimes, which the Government seeks to introduce under Rule 404(b) must necessarily be weighed under Rule 403 against the danger that it would create unfair prejudice to the trial of Defendant. *United States v. Lebovitz*, 669 F.2d 894, 901 (3d Cir. 1982).

The courts have long recognized that early determinations of the admissibility of other crimes evidence serves the salutary purpose of avoiding unnecessary delay during trial. See *United States v. Baum*, 482 F.2d 1325, 1332 (2d Cir. 1973); *see also Riggs v. United States*, 280 F.2d 750, 753 (5th Cir. 1960 )(conviction reversed where concealment until trial of prior bad act); *United States v. Kelly*, 420 F.2d 26, 29 (2d. Cir. 1969)(pretrial disclosure avoids trial by ambush).

The government should therefore be ordered to disclose by a reasonable date certain whether it intends to introduce Rule 404(b) evidence and to provide a description and

summary of such evidence so that a hearing can be held and a determination of admissibility can be made reasonably in advance of trial.

## POINT VI

**DEFENDANT FIORINO SEEKS LEAVE TO MOVE *IN LIMINE* FOR AN AUDIBILITY HEARING, A FRANKS HEARING AND/OR FOR SUPPRESSION BASED ON VIOLATION OF ATTORNEY CLIENT PRIVILEGE AND/OR INADMISSIBLE HEARSAY AFTER THE GOVERNMENT HAS DESIGNATED ANY TAPES THAT IT INTENDS TO INTRODUCE AT TRIAL AND BASED UPON ANY PARTICULARS AND ADDITIONAL DISCOVERY PROVIDED BY THE GOVERNMENT FOLLOWING SUBMISSION OF THESE MOTIONS**

To the extent that the Government seeks to introduce tape recorded conversations in which either the defendant or unindicted co-conspirators are intercepted, defendant Fiorino seeks leave to move *in limine* for an audibility hearing, if warranted, and/or a Franks hearing challenging the identification of his voice after the government has designated the tapes that it intends to introduce at trial.

In addition, Defendant Fiorino seeks leave to suppress individual tapes in which Peter Peluso and/or Thomas Lee were intercepted based on the grounds that violate attorney client privilege. Further Defendant Fiorino seeks leave to suppress individual tapes on the grounds that they do not satisfy Rule 801(d)(2)(E) and constitute inadmissible hearsay because they were not made in furtherance of the conspiracy, and were nothing more than "mere idle chatter." *United States v. Desena*, 260 F.3d 150 (2d Cir. 2001); *United*

33

*States v. Paone,* 782 F.2d 386, 390 (2d Cir.1986).

## CONCLUSION

For the foregoing reasons, the relief requested herein should be granted.

Additionally, Defendant Fiorino adopts the motions of his co-defendants to the extent they

are not inconsistent with the instant motion.

Dated:        New York, New York                       Respectfully submitted,
              July 6, 2006

              .                                         _____
                                                        Michael Rosen, Esq.
                                                        61 Broadway - Suite 1105
                                                        New York, New York 10006
                                                        212-742-1717

34